**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-20043**

---

**AMERICAN NURSES FOR NURSES, INC.,**
**dba Stat Medical Services,**

**Plaintiff-Appellee**
**Cross-Appellant,**

**VERSUS**

**NATIONAL UNION FIRE INSURANCE CO.**
**OF PITTSBURGH, PA.,**

**Defendant-Appellant,**

**and**

**COTTERELL, MITCHELL & FIFER, INC.,**

**Defendant-Appellant**
**Cross-Appellee.**

---

Appeal from the United States District Court
For the Southern District of Texas
(CA-H-92-2029)

---

JULY 8, 1996

Before KING, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

---

[*]Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

National Union Fire Insurance Company (National Union) and Cotterell, Mitchell & Fifer, Inc. (CMF) appeal from the district court's final judgment awarding plaintiff-appellee Stat Medical Services (Stat Medical) $1,177,000 in compensatory and exemplary damages for statutory violations of the Texas Deceptive Trade Practices Act (DTPA) and article 21.21 § 16 of the Texas Insurance Code. Stat Medical filed a cross-appeal challenging the district court's order imposing discovery sanctions. After an exhaustive review of the record, unaided by the disingenuous briefing of this case by all attorneys involved, we reverse the district court's liability finding as to Nation Union, affirm the liability finding as to CMF, and affirm the district court's order imposing discovery sanctions on Stat Medical.

## I. FACTS & PROCEDURAL HISTORY

*A. The Policy and its Effective Date*

Stat Medical operates a temporary employment agency that provides nursing staff to hospitals and other medical facilities. Stat Medical's customers generally require proof of professional liability insurance before contracting for nursing services. CMF is an insurance broker authorized to solicit professional liability insurance policies for National Union through National Union's managing agent, Smith, Bell & Thompson (SBT).

On April 7, 1989, Stat Medical's co-owner Catherine Herridge contacted CMF employee Mary Ann Clark to obtain professional liability insurance.  Herridge explained that immediate coverage was required to satisfy existing contracts for nursing services.  Clark told Herridge that the insurance could be bound as soon as CMF received a check in the amount of $1,143.00 and Stat Medical's completed application.  On April 13, 1989, Herridge completed the application and wrote a check to CMF in the amount of $1,143.00.[1]  Herridge testified that she requested an April 13 effective date.

SBT received Stat Medical's application on April 19, 1989 and, according to its usual practice, issued a quotation letter on April 20.[2]  Shortly thereafter, Stat Medical received a certificate of insurance from CMF evidencing professional liability insurance placed with National Union in the amount of $1,000,000.  The policy number was listed as "TBD" (to be determined).  The certificate bore an "issue date" of April 17, 1989, and contained the following disclaimer:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

---

[1] Although it is not clear how the application and premium check were delivered to CMF, Stat Medical's check cleared the bank on which it was drawn on May 3, 1989.

[2] SBT generally made policies effective from the date it received notice that the customer accepted the premium stated in SBT's quotation letter.

On June 16, 1989, SBT sent CMF an invoice for unpaid premium in the amount of $57. The invoice identified the policy number as 2159, with an effective date of April 25, 1989. Stat Medical claims that CMF sent other renewal notices and certificates throughout 1989 that identified April 25 as the effective date for the National Union policy.

National Union actually issued the policy with an effective date of May 24, 1989. Nothing in the record suggests that National Union was involved in either the application process or the issuance of any documentation that incorrectly identified the policy date. Stat Medical received a copy of the policy in July 1989. Herridge testified that she noticed the May 24 effective date of the policy, but she instead relied upon the correspondence from CMF indicating an April 25 effective date for the policy.

*B. Stat Medical's Coverage Claim and the Defense of the Moddle Suit*

Predictably, a claim arose between the time Stat Medical submitted its application for insurance and the policy's effective date of issuance. On May 5, 1989, Louise Moddle died at McAllen Medical Center while under the care of one of Stat Medical's nurses. Ten months later, on March 14, 1990, McAllen Medical Center notified Stat Medical of a potential malpractice claim. Stat Medical forwarded the notice to CMF, but received no response from CMF, SBT or National Union.

On August 23, 1990, Stat Medical sent CMF a second notice of potential liability on the Moddle claim.[3]  On September 24, 1990, National Union informed Stat Medical that Moddle's death predated the policy's effective date and, therefore, any claim relating to her death was not covered by the policy.  Stat Medical responded by faxing National Union the CMF certificate of insurance bearing an "issue date" of April 17, 1989.  On October 11, 1990, National Union again denied the claim and refused to defend Stat Medical against Moddle's claims.  National Union advised Stat Medical that April 17 was merely the certificate's "issue date," and did not signify that coverage was in effect on that date.

On March 11, 1991, Moddle's estate and family sued McAllen Medical Center and the attending physicians in state court (the Moddle suit).  The Moddle suit defendants filed a third-party action against Stat Medical for contribution and indemnity based on a negligent nursing care claim.  In 1992, Stat Medical independently settled the Moddle suit for  approximately $21,000.

*C. The Current Suit against CMF and National Union*

On May 8, 1992, Stat Medical filed this suit against CMF, SBT and National Union in Texas state court, alleging breach of contract, negligence/gross negligence, fraud, violations of the Texas Deceptive Trade Practices Act (DTPA), and violations of the

---

[3]  There is no allegation that National Union was notified of the potential claim filed by Stat Medical before August 1990.

5

Texas Insurance Code.[4]  In addition to the $21,000 settlement, Stat Medical claimed $21,573.81 in attorney fees and $7,910.29 for out-of-pocket expenses incurred while defending the Moddle suit.  Stat Medical also sought damages for loss of business, reputation and credit.  In July 1992, National Union removed the case to federal court based on diversity jurisdiction.

*D. Discovery Disputes and Sanctions*

After a scheduling conference, the district court entered an order imposing a discovery deadline of September 15, 1993.  In late July 1993, shortly before the discovery deadline, Stat Medical began to develop its damage theory by deposing Stat Medical co-owner Abu-Awad.  Abu-Awad offered testimony that National Union's failure to provide coverage for and defend the Moddle claim had caused Stat Medical to lose a bid on a six-hospital contract to provide nursing services.  Abu-Awad identified the six hospitals and produced Stat Medical accounting records relating to its past business with the six hospitals.  In August 1993, co-owner Herridge was deposed and offered similar testimony.

On September 9, 1993, Stat Medical supplemented its responses to the defendants' interrogatories by naming 21 additional witnesses, including the custodians of record for the six hospitals identified by Abu-Awad's deposition testimony.  Stat Medical also

---

[4]SBT was subsequently dismissed and is not a party to the appeal.

requested subpoenas for the deposition of several of those witnesses. On September 10, Stat Medical notified the defendants of its intent to depose four of these individuals on September 14 and 15.

On September 13, 1993, CMF moved for protection and sanctions. The district court granted CMF's motion, finding that Stat Medical's responses were not timely and that it had intentionally concealed the names of persons with facts relevant to the lawsuit. The district court ordered Stat Medical not to depose the four new witnesses. The district court, however, permitted Stat Medical to call those witnesses at trial. Thereafter, Stat Medical included these same witnesses in the joint pretrial order entered October 1, 1993, without objection by the defendants.

On December 7, 1993, Stat Medical attempted to amend the joint pretrial order by designating a "newly discovered witness." CMF again filed for protection and sanctions. The district court again granted CMF's motion, finding that Stat Medical's continued abuse of the discovery process and its violation of the district court's earlier discovery order justified precluding Stat Medical from offering any evidence "related to the loss of business, loss of profits and loss of business goodwill." However, at trial, the district court reconsidered and allowed Abu-Awad to testify about the impact of the Moddle lawsuit on Stat Medical's business and creditworthiness. Further, the issue of damage to business and credit reputation was submitted to the jury. On cross-appeal, Stat

7

Medical argues that it did not abuse the discovery process and that the district court's orders constituted an abuse of discretion.

*E. Jury Findings and Judgment*

The jury found that National Union and CMF knowingly engaged in unfair and deceptive acts or practices which caused damages to Stat Medical. The jury also found that CMF engaged in unconscionable conduct and failed to comply with a warranty. The court entered judgment on the jury's award of $250,000 in compensatory damages and $425,000 in punitive damages. The court then imposed joint and several liability on National Union and CMF for $250,000; several liability against National Union for $500,000; several liability against CMF for $427,000; pre- and post-judgment interest; and $150,000 in attorneys' fees ($125,000 for the trial and $25,000 for any appeal).

## II. Analysis

*A. National Union's Liability*

National Union appeals from the district court's final judgment, arguing primarily that the evidence was insufficient to support the jury's finding that it violated the Texas Insurance Code. We agree.

Stat Medical claims that it was misled by insurance agent CMF employee Clark, and by various documentation received from CMF,

into believing that its professional liability insurance coverage went into effect in April 1989. In fact, the effective date of the insurance policy was May 24, 1989. Further, nothing in the record indicates that National Union was involved in any way with the application process, or that National Union issued any documentation to Stat Medical that did not correctly identify the policy effective date as May 24, 1989. National Union cannot be held liable for wrongfully refusing to defend or for refusing coverage because no party disputes that no coverage existed. National Union had a reasonable basis, as well as a factually accurate and sufficient basis, for refusing to provide coverage for Stat Medical's claim.

Moreover, National Union cannot be held liable on a theory of vicarious liability. Stat Medical made a strategic trial decision to hold each defendant liable for its own separate and independent conduct. Stat Medical, therefore, failed to establish any agency relationship between CMF and National Union, and it did not include any questions on the issue of agency in its proposed jury instructions. Even in its post-trial motions, Stat Medical disclaimed any reliance on an agency theory to support the verdict. Thus, Stat Medical's argument to this Court that the district court determined as a matter of law that CMF was National Union's agent, and that there was no need for a jury issue on the question of agency, is disingenuous, to say the least.

The district court did not find that CMF was National Union's agent as a matter of law, nor would such a determination have been proper. The district court denied National Union's motion for summary judgment on the agency issue because there was a genuine fact issue about the relationship.

Article 21.02 of the Texas Insurance Code generally defines agents and lists various acts for which a party "shall be held to be the agent of the company for which the act is done, or the risk taken, as far as relates to all liabilities, duties, requirements and penalties set forth in this chapter." TEX. INS. CODE ANN. art. 21.02 (Vernon Supp. 1996). Article 21.02 further states that agents are not authorized "to orally, in writing, or otherwise alter, amend, modify, waive, or change a term or condition of an insurance policy or application for an insurance policy." Id. Therefore, absent a showing of actual or apparent authority given by National Union to CMF to modify the terms of the policy or the policy issuance date, CMF's authority was limited to accepting and forwarding insurance applications. See e.g., Maccabees Mut. Life Ins. Co. v. McNiel, 836 S.W.2d 229, 232 (Tex. App.--Dallas 1992, no writ); Guthrie v. Republic Nat'l Ins. Co., 682 S.W.2d 634, 636-37 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.). After reviewing the record, we hold that the undisputed evidence at trial showed that CMF had neither actual nor apparent authority to issue

10

a certificate evidencing coverage or to bind coverage for National Union.

Further, National Union cannot be held vicariously liable in this case. When National Union raised the agency issue just prior to submitting the case to the jury, the district court stated to all parties that Stat Medical had exercised its right to submit the case without reliance on any theory of agency liability. Neither Stat Medical nor CMF objected. CMF also failed to request a jury finding on the issue of its relationship to National Union. Further, CMF has not appealed the district court's failure to submit an issue on agency. We conclude, therefore, that the case was tried without reliance on a theory of vicarious liability against National Union. There is insufficient evidence and no jury finding to support imposition of such liability.

Stat Medical and CMF next argue that National Union failed to preserve error on this issue because its Rule 50 motion, made at the close of Stat Medical's case, was not renewed at the close of all evidence. We are not convinced that National Union's technical noncompliance with Rule 50 precludes our review. "This circuit has excused a defendant's technical noncompliance caused by a failure to renew a motion for directed verdict where the purposes of Rule 50(b) have been satisfied." *Villanueva v. McInnis*, 723 F.2d 414, 417 (5th Cir. 1984) (collecting cases).

Rule 50(b) serves two purposes: (1) it enables the trial court to re-examine the sufficiency issue if the jury returns a verdict against the movant and (2) it alerts the non-movant to the problem of insufficiency before the issue is submitted to the jury. *Id*. Although National Union did not formally move for judgment as a matter of law a second time prior to jury submission, in the charge conference National Union did ask that the case be taken from the jury based on the insufficiency of evidence supporting its liability. As a result, both the court and opposing counsel had adequate notice of, and were squarely confronted with, National Union's contention that the evidence was insufficient to support liability. *See also* <u>Villanueva</u>, 723 F.2d at 417-18 (discussing cases); 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §2537, at 338-44. We have also held "that `when the trial court reserves its ruling on the defendant's motion for a directed verdict and the only evidence introduced after the motion is not related to the motion, the defendant's failure to renew his motion should not preclude a judgment n.o.v. in his favor.'" <u>Purcell v. Seguin State Bank and Trust Co.</u>, 999 F.2d 950, 956 (5th Cir. 1993) (quoting <u>Miller v. Rowan Cos., Inc.</u>, 814 F.2d 1021, 1025 (5th Cir. 1987)).

In the present case, little evidence was presented after National Union's initial motion for judgment as a matter of law. Each defendant called a single witness, and there was virtually no

testimony that would have impacted the district court's earlier denial of National Union's motion. For these reasons we excuse National Union's technical noncompliance with Rule 50.

In summary, there is insufficient evidence to support the jury's determination that National Union violated the Texas Insurance Code. Accordingly, the jury's finding that National Union committed the violation "knowingly," and the district court's post-verdict imposition of penalty damages against National Union in the amount of $500,000, cannot stand. Neither Stat Medical nor CMF may rely upon a theory of vicarious liability to hold National Union liable for the jury's findings against CMF. Thus, we conclude that the judgment of damages against National Union must be reversed in its entirety.

*B. CMF's Liability*

CMF appeals only the district court's January 17, 1995, order denying its motions to vacate or modify the judgment. In two separate motions to modify the judgment, CMF made two arguments: one challenging the district court's award of penalty damages against both CMF and National Union on the basis of a single finding of actual damages, and one related to the statute of limitations. We address each of these arguments in turn.

The jury found that CMF violated the DTPA and that the violation was committed "knowingly." The jury also found that

13

National Union violated the Insurance Code and that the violation was committed "knowingly." Two damage issues were submitted. In the first, the jury awarded $250,000 in actual damages caused by the conduct of both CMF and National Union. In the second, the jury awarded $425,000 in penalty damages based on the conduct of CMF only. There was no damage issue submitted for penalty damages against National Union. The district court awarded an additional $500,000 in penalty damages against National Union based on Stat Medical's post-trial motion.

CMF then moved to amend the judgment, arguing that under Texas law the actual damage award of $250,000 could not be used as the basis for both the $425,000 award against CMF and the $500,000 award against National Union. CMF contended that Stat Medical was required to make an election of remedies. In the absence of such an election, CMF argued that the district court was bound to reform the judgment to limit plaintiff's award to the highest possible recovery. Based on this reasoning, CMF argued that the entire liability award for actual and penalty damages should be assessed against National Union because the penalty award against National Union was higher than the penalty award against CMF. Thus, the judgment should have been imposed against National Union for $750,000 ($250,000 in actual damages plus $500,000 in penalty damages).

The district court summarily rejected this argument, which serves as the linchpin of CMF's contentions on appeal. Of course,

14

the fatal weakness in this position is that, as we held above, there is no evidentiary basis for holding National Union liable and no basis for the separate award of $500,000 punitive damages assessed by the trial court. Having concluded that the award of both actual and penalty damages against National Union must be reversed on sufficiency grounds, there remains only one penalty damage award and CMF is now faced with shouldering the entire burden.

Further, CMF failed to appeal the final judgment and does not challenge the sufficiency of the evidence. Moreover, CMF did not move for judgment as a matter of law or otherwise object on sufficiency grounds at any time. These mistakes preclude our review of the excessiveness of the damage award as to CMF.

Next, CMF briefly raises the argument that Stat Medical's claim was barred by the applicable statute of limitations. CMF first raised the statute of limitations argument in its motion for summary judgment. The district court denied the motion on the ground that a fact issue remained about when Stat Medical actually discovered the alleged misrepresentations. CMF failed to raise the statute of limitations again, either formally or informally, until after trial. CMF then attempted to revive this affirmative defense in post-trial motions for judgment as a matter of law and to amend the judgment. As such, the record contains no evidence relating to the statute of limitations defense. "We can only review the record

15

and do not take evidence to supplement or contradict it." *Roberts v. Wal-Mart Stores, Inc.*, 7 F.3d 1256, 1258 (5th Cir. 1993).

It is clear that we cannot review the district court's summary judgment determination, because the case has been fully tried on the merits. *See* *Black v. J.I. Case Co.*, 22 F.3d 568 (5th Cir.), *cert. denied*, 115 S. Ct. 579 (1994). Furthermore, CMF's Rule 50 motion and other motions filed after the verdict are untimely and similarly ineffective to preserve the error. "When the defendant fails to renew the motion for judgment as a matter of law at the close of all the evidence, our inquiry is limited to `whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice.'" *Mac Arthur v. University of Tex. Health Center Tyler*, 45 F.3d 890, 896 n.8 (5th Cir. 1995) (quoting *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir. 1978)). Consequently, we may conduct a review solely for determining whether a manifest miscarriage of justice exists in this case.

From the record, it appears CMF's decision to ignore the statute of limitations issue may have been purposeful. In the order denying CMF's motion for summary judgment, the district court determined that the discovery rule applied to toll the statute of limitations, and found that there was a fact issue about when Stat Medical discovered or should have discovered the wrong. CMF, which

16

sought to benefit from this affirmative defense, then had the burden to try the issue or obtain a finding allowing relief in its favor. The strategy appeared to be to hide behind the log until after trial and then argue that Stat Medical bore the burden of proof under the discovery rule. The log, in this case, provides no hiding-place from a failure to preserve error.

In addition, no party can assign the failure to give an instruction as error unless that party objects to the instructions. FED. R. CIV. P. 51. Rule 51 thus imposes a burden on both parties to come forward with issues that need to be submitted to the jury or considered by the court prior to submission. We conclude, therefore, that CMF failed to preserve error on this issue. Because CMF failed to preserve error on its statute of limitations defense, and because its only other point on appeal must fail because the penalty damages against National Union are not supported by sufficient evidence, we affirm the district court's award of actual and penalty damages against CMF.


*C. Stat Medical's Cross-Appeal*

Stat Medical asks this Court to remand the case for trial on breach of contract, negligence and fraud claims that it contends (without explanation) are supported by the evidence excluded from trial. Stat Medical also challenges the district court's exclusion of evidence relating to the loss of an exclusive nursing services

17

contract with six hospitals. The court's exclusion of this evidence began as a discovery dispute.

Shortly before the discovery deadline of September 15, 1993, and over a year after the case was filed, Stat Medical attempted to develop its damages theory. This theory was premised on business losses and other intangible losses allegedly due to the defendants' conduct in this case. Six days before the discovery deadline, Stat Medical supplemented an earlier interrogatory answer by naming 21 new people with relevant knowledge, including the custodians of records for the six hospitals that allegedly withdrew their business after the Moddle claim. On September 10, 1993, Stat Medical noticed four individuals for depositions to occur on September 14 and 15. On September 15, Stat Medical noticed six other individuals for depositions by written questions.

In response to CMF's motion for protection and sanctions, the district court found Stat Medical's late development of its damages theory to be an abuse of the discovery process. The court ordered Stat Medical to withdraw its deposition notices and ruled that Stat Medical could not depose the later designated witnesses for trial. However, Stat Medical sought and was granted leave to amend its complaint to add a damage theory based on loss of business and reputation. In fact, Stat Medical included the previously excluded witnesses and other evidence relating to its loss of business and reputation damage theory in the pretrial order.

18

In December 1993, Stat Medical attempted to amend the pretrial order by adding another witness. CMF again moved for sanctions, arguing that the new witness was merely a substitute for an earlier excluded witness and that the district court's order intended to preclude Stat Medical, not only from deposing the witnesses pretrial, but from developing its lost contract damages theory at all. CMF also argued that the inclusion of the Stat Medical's witnesses in the pretrial order constituted a violation of the district court's earlier discovery order. In response, the district court precluded Stat Medical from introducing evidence on its loss of business, loss of profits or loss of business goodwill theories.

At trial, however, the district court reversed itself and allowed Abu-Awad to testify about the impact on Stat Medical's business and creditworthiness. Likewise, damage to business and credit reputation was submitted as an element to the jury. The district court has broad discretion to exclude evidence when enforcing its own scheduling orders. _Edwards v. Cass County, Texas_, 919 F.2d 273, 275 (5th Cir. 1990). We find no abuse of discretion in this case.

CMF also contends that the district court erred by applying the Texas prejudgment interest statute. CMF raises this argument for the first time on appeal. "We consider an issue raised for the first time on appeal only if it presents a purely legal question

19

and failure to address it would result in grave injustice." *Kelly v. Foti*, 77 F.3d 819, 822 (5th Cir. 1996).  CMF has not shown that our refusal to consider its argument that the district court erroneously applied prejudgment interest will result in grave injustice.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment to the extent that it is premised upon National Union's liability.  We **AFFIRM** the district court's judgment to the extent it is premised upon CMF's liability.  Further, we find no error in the district court's discovery orders, and **AFFIRM** those rulings.